In the Matter of the Claim of THERESSIA C. LOVE, Appellant, against THATCHER MANUFACTURING COMPANY, Employer, and STATE INSURANCE FUND, Insurance Carrier, Respondents. STATE INDUSTRIAL BOARD, Respondent.

Third Department, May 5, 1937.

*John E. Sullivan*, for the appellant.

*Walter D. Smith*, for the employer and State Insurance Fund, respondents.

RHODES, J.   Claimant's husband was employed by the employer herein in the process of manufacturing molds for milk bottles. His work required him to lift molds or castings from the floor to a table or bench, and from the bench to a lathe about four feet distant, where they were placed in position and ground and were then lifted from the lathe to the table.   The molds weighed seventy-five pounds; the employment was heavy work; it required him to lift from five to seven of these castings per day.

About two years previously he had been operated upon for hernia.   Formerly he had been a robust man, but his coemployees testified that his health seemed to be failing and that he appeared to be slowing up in his work.   His family physician testified that prior to the hernia operation deceased had had high blood pressure and had been gradually going downward, but that after the operation he appeared to be in good shape, although he was frequently treated by the physician and while his blood pressure was high, there were times when it was down to 150.   He was about fifty-six years old.

On May 3, 1935, he did not appear to be well, and in the midst of his work had a " spell " and just leaned over, head down — sat down at the table, leaning his head upon his arm, acted as if he was sleepy and tired.   He then made an effort to resume his work and soon thereafter said to a fellow employee that he had " got a dizzy spell," that he could not stand it and was going home.   He " washed up," put on his coat and hat and left the plant, leaving a partially finished mold in the lathe.   Later in the afternoon he called upon his physician to whom he stated that while lifting a mold weighing 150 pounds, everything went black; he suddenly felt a nauseated feeling, became dizzy, feet became numb, could not talk; that he hardly knew what was going on or how he got to the doctor's office.   He drove from the plant in a car and later stated that he did not remember how he got across town.   He also told his wife that while lifting a mold into the machine " he felt a sting in his side like when he had a hernia, and then could not move his foot; just came over him."   He made similar statements to others.

His physician found that he had a pain in the groin and a hernia which was apparently recurrent, and he complained of dizziness and was suffering from cerebral hemorrhage.   He had called at the office of his physician about three days before.   His blood pressure was then down to about 162 and the physician testified that " you don't have a cerebral hemorrhage when the blood pressure is under 200.   It is something that pushes up that blood

pressure quickly; ordinarily you don't get a cerebral hemorrhage from a blood pressure under 200."

His death occurred on September 1, 1935, from coronary embolism, arteriosclerosis and cerebral hemorrhage. In the opinion of his physician the lifting of the heavy mold was a contributing cause to his disability and death.

This is a summary of most of the facts favorable to claimant.

An award was directed by the hearing referee, but on a later hearing before the State Industrial Board the award was rescinded and compensation was denied.

The Board has found that deceased did not sustain an accidental injury at the time in question. This determination of fact, in so far as it is a determination of fact, is of course conclusive.

A member of the State Industrial Board, however, after the hearing before it, wrote a memorandum of decision wherein he stated: " I find no evidence or circumstance to corroborate the hearsay evidence of such an injury." This statement indicates that the opinion of the Board was that assuming all the facts most favorable to the claimant, such facts did not in law establish sufficient corroboration.

We think that as a matter of law the facts and inferences most favorable to the claimant, if accepted by the Board, are sufficient to corroborate the hearsay declarations as to the accident. We are not to be understood as saying that the State Industrial Board must find in favor of the claimant. The facts to be accepted and the inferences properly to be drawn from them are wholly within the province of the Board. It evidently misconstrued the question of law in its assumption that the evidence, if believed, was insufficient corroboration.

Because of this seeming misconception as to the legal effect to be given to the evidence and permissible inferences should the Board find them in favor of claimant, the decision of the Board should be reversed and the matter remitted for such further consideration of the facts as the Board may deem proper, with costs to the claimant against the employer and carrier respondents.

McNAMEE and CRAPSER, JJ., concur; HILL, P. J., concurs in opinion of RHODES, J., and favors reversal for the additional reason that proper consideration was not given to the evidence furnished by the deceased employee prior to his death. (Workmen's Comp. Law, § 118.) HEFFERNAN, J., concurs with HILL, P. J.

Decision reversed and matter remitted to the State Industrial Board, with costs to the claimant against the employer and the carrier.